**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHARLES F. MURRAY,               :
                                              Civil Action No. 09-3183 (JEI)
          Petitioner,    :

          v.            :    **OPINION**

J. GRONDOLSKY, et al.,           :

          Respondents.   :


**APPEARANCES:**

Petitioner pro se
Charles F. Murray
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640


**IRENAS**, Senior District Judge:

    Petitioner Charles F. Murray, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,[1] challenging certain aspects of the Bureau of Prisons' Community Based Program Agreement.

---

    [1] Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
    (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Based on his affidavit of indigence in the related criminal proceeding, the Court will grant Petitioner leave to proceed in forma pauperis. Because it appears from a review of the Petition that Petitioner is not entitled to issuance of the writ, the Court will dismiss the Petition. See 28 U.S.C. § 2243.

## I. BACKGROUND

On August 27, 2004, Petitioner was sentenced by this Court to 83 months incarceration, to be followed by 36 months of supervised release, and a $5,000 fine. See United States v. Murray, Criminal No. 04-0207 (D.N.J.).[2] Petitioner was also sentenced by the U.S. District Court for the Eastern District of Pennsylvania, in 2004, to a term of imprisonment of 40 months. See United States v. Murray, Criminal No. 04-0666 (E.D. Pa.). Petitioner is currently confined pursuant to these sentences.

Petitioner asserts that he has an anticipated release date of June 16, 2010. He alleges that on April 1, 2009, he was asked to execute a form Community Based Program Agreement setting forth the terms of his anticipated pre-release transfer to a

---

[2] This Court will take judicial notice of its dockets and the dockets of other federal courts in other matters related to this Petition. See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

Residential Re-entry Center ("RRC").[3] The Community Based

---

[3] The Second Chance Act of 2007, which became effective April 9, 2008, provides in pertinent part:

> (1) In General.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> ...
>
> (6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--
>
> > (A) conducted in a manner consistent with section 3621(b) of this title;
> >
> > (B) determined on an individual basis; and
> >
> > (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c). Pursuant to BOP Program Statement 7300.09, Community Corrections Manual, all prisoners who transfer to a Residential Re-entry Center as part of their pre-release transition programming are required to participate in the Subsistence Program.

> To promote financial responsibility and offset the cost of incarceration, the Bureau requires inmates to make subsistence payments to contractors. Contractors shall collect 25% of each employed inmate's weekly gross income not to exceed the daily inmate-day rate.

Program Statement 7300.09 § 5.13.1. The Manual also provides that inmates who fail to pay the subsistence may have privileges

Program Agreement contains the following term, which Petitioner found objectionable:

> I understand that while a resident of a residential reentry center or work release program I will be expected to contribute to the cost of my residence through payments to the contractor and I agree to make such payments.  I understand that failure to make payments may result in my removal from a community based program ... .

(Petition, Ex. 1.)  Petitioner proposed that the paragraph be altered as follows:

> I understand that while a resident of a residential reentry center or work release program I will be expected to contribute to the cost of my residence through payments to the contractor and I agree to make such payments only when authorized under statutory law or code of federal regulations.

(Petition, Ex. 2.)

Petitioner was advised that no alteration of the Community Based Program Agreement was permitted and that he would not be considered for pre-release transfer to a Residential Re-entry Center until he executed the Community Based Program Agreement.

Petitioner began the Bureau of Prisons administrative remedy process, but did not complete it.

Petitioner then filed this Petition, challenging the decision to make his pre-release transfer to an RRC dependent upon his executing the Community Based Program Agreement, asserting that expenses attendant to his incarceration must be

---

withheld or disciplinary action taken, including termination from the program.  Id.

paid out of the Treasury of the United States, see 18 U.S.C. § 4007, and that he is exempt from paying any "Cost of Incarceration Fee" under 28 C.F.R. § 505.3.  Petitioner argues that his failure to exhaust administrative remedies should be excused because exhaustion would be "an exercise in futility" when the denial of transfer is based upon a BOP-wide Program Statement and the time lost during the administrative appeal process would prejudice Petitioner.

> II. STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Nevertheless, a federal district court can

dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

### III.  ANALYSIS

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

6

where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the

Regional Director signed the response.  <u>Id.</u>  Appeal to the General Counsel is the final administrative appeal.  <u>Id.</u>  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Petitioner admits that he has not exhausted his administrative remedies with respect to the claim asserted here.  Petitioner has not alleged any facts that would permit this Court to find that exhaustion of Petitioner's administrative remedies would have been futile or that requiring exhaustion would subject Petitioner to "irreparable injury."  To the contrary, Petitioner initiated the informal resolution request on April 24, 2009, and received a response on May 14, 2009.  Petitioner sent a BP-9 request to the Warden on May 19, 2009, and received a response on June 5, 2009.  The facts as alleged demonstrate timely responses, thus far, to Petitioner's administrative remedies.  In addition, as of June 5, 2009, Petitioner had more than a year remaining until his anticipated release date.  Pre-release transfer to an RRC is limited to a maximum of twelve months; the recommendation for Petitioner was 150-180 days.[4]  Petitioner had time to exhaust

---

[4] Petitioner alleges that he has requested administrative reconsideration of the recommended 150-180 days.  The Court does not construe the Petition as challenging that recommendation.  To the extent the Petition could be so construed, Petitioner's failure to exhaust his administrative remedies with respect to that issue again precludes this Court from providing relief at this time.  Petitioner's disagreement with the pre-release

8

his administrative remedies.  Exhaustion is not rendered futile just because a prisoner anticipates that he will be unsuccessful.  Accordingly, the Petition is subject to dismissal for failure to exhaust administrative remedies.

In the alternative, to the extent failure to exhaust could be excused, the Petition is meritless.

Part 505 of Title 28 of the Code of Federal Regulations governs the "Cost of Incarceration Fee" required to be paid by certain prisoners.  Section 505.3, on which Petitioner here relies, provides in pertinent part that "Inmates ... who have had a fine either imposed or expressly waived by the United States District Court, pursuant to Section 5E1.2(e) of the United States Sentencing Guidelines, or any successor provisions, are exempt from fee assessment otherwise required by this part."[5]  Assuming

---

placement recommendation, that his personal circumstances justify a longer pre-release RRC placement, is precisely the type of issue appropriate for agency creation of a factual record and application of agency expertise.

[5] United States Sentencing Guidelines Section 5E1.2(e) provides:

> If the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine.  In these circumstances, the court shall consider alternative sanctions in lieu of all or a portion of the fine, and must still impose a total combined sanction that is punitive.  Although any additional sanction not proscribed by the guidelines is

that Petitioner is exempt from paying the "Cost of Incarceration Fee," as he contends, nothing in 28 C.F.R. § 505.3 or 18 U.S.C. § 4007 precludes the Bureau of Prisons from requiring Petitioner to pay a portion of the cost of incarceration in connection with pre-release programming.  Cf., e.g., Parisi v. United States, 2009 WL 1851042, *4-*5 (N.D.N.Y. June 26, 2009) (nothing in 18 U.S.C. § 4042(a)(2), which requires the BOP to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" prohibits the BOP from contracting with inmates, through the Community Based Program Agreement, that no medical treatment may be provided at government expense without prior authorization of the BOP); Castro v. United States, 2009 WL 1814584, *3-*4 (N.D. Cal. June 24, 2009) ("Cost of Incarceration Fee" under 28 C.F.R. § 505.3 is distinct from the Subsistence Program applicable to prisoners in pre-release placement at RRC; exemption from "Cost of Incarceration Fee" does not exempt prisoners from responsibility for payments under Subsistence Program).

---

permissible, community service is the generally preferable alternative in such instances.

IV.  CONCLUSION

For the reasons set forth above, the Petition will be dismissed for failure to exhaust administrative remedies or, in the alternative, denied as meritless.

An appropriate order follows.

 s/ Joseph E. Irenas
Joseph E. Irenas
United States District Judge

Dated: July 10, 2009